BRESLER & REINER, INC. and Reading Redevelopers, Inc.

v.

HOLIDAY INNS, INC.

Civ. A. No. 75–1618.

United States District Court,
E. D. Pennsylvania.

March 2, 1977.

Allen J. Levin, Goodis, Greenfield, Henry & Edelstein, Philadelphia, Pa., for plaintiffs.

Raymond W. Midgett, Jr., Arthur E. Newbold, IV, Manuel Gottlieb, Philadelphia, Pa., George D. Reycraft, Wendell B. Alcorn, Jr., Robert A. Lonergan, New York City, for defendant.

## MEMORANDUM

GORBEY, District Judge.

Plaintiffs have filed a motion for a partial summary judgment on the issue of liability for the relief set forth in paragraph 1 and 2 of the prayer for relief in their complaint. The basis of the motion is that the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, demonstrate the absence of a genuine issue as to any material fact pertaining to such liability, and that plaintiffs are entitled to a judgment as a matter of law with respect thereto.

Plaintiffs assert that under the judgment of Judge Garth on "virtually identical facts" in the case of *American Motor Inns, Inc. v. Holiday Inns, Inc.*, D.C., 356 F.Supp. 1073 (1973), there is no genuine issue of fact with respect to the allegations of their complaint and the prayers for relief on which the motion is based. Plaintiffs state at page 3 of their brief in support of the motion that:

"This Motion rests solely on the portion of Judge Garth's judgment and opinion in the AMI case which rules that the conduct of the defendant Holiday Inns, Inc. (hereinafter "HI") constituted a combination or conspiracy with others which effected a horizontal restraint of trade in violation of Section 1 of the Sherman Act. This ruling was expressly affirmed by the Court of Appeals for the Third Circuit in *American Motor Inns, Inc. vs. Holiday Inns, Inc.* Appellant and *International Association of Holiday Inns*, Intervenor-Defendant, 521 F.2d 1230 (1975). (The Court of Appeals reversed and remanded portions of Judge Garth's judgment on other issues in the AMI case

which are not relevant to the present Motion.)"

Defendant naturally opposes the motion, pointing out at page 8 of its brief that:

"The plaintiffs' motion for partial summary judgment presents only one narrow question:

Are the plaintiffs entitled to a judgment as a matter of law on the issue of whether the plaintiffs were denied a Holiday Inn franchise in Reading as a result of a local conspiracy between Holiday Inns and its franchisees? . . ."

Defendant points out at pages 16, 17 and 18 of its brief that the plaintiffs' complaint was filed just prior to the Third Circuit Court of Appeals' decision, and therefore, drafted clearly in reliance on the district court's opinion. Consequently, it is urged, as a result of the appeal, only two of the district court's findings were left standing; "*i. e.*, that a local conspiracy existed 'with respect to the application for a franchise at Newark airport' and that 'the combination of the company-town policy and the non-Holiday Inn clause constituted an unreasonable restraint of trade.'" The second finding is conceded by the plaintiffs to be inapplicable to the facts underlying their claim in the instant case. Page 8, Plaintiffs' Brief.

There are substantial factual differences between the AMI case and the instant one. In the AMI case, as a result of sending out, in conformity with its policy radius letters, objections to the granting of the requested franchise were received, followed thereafter by a rejection of the application. On the basis of the evidence produced at a trial, the district court concluded that the denial was the result of a local conspiracy.

In affirming that finding it is quite significant that the Circuit Court of Appeals stated:

"[a]lthough the trial court here might have been justified if he had concluded that HI had acted autonomously in rejecting AMI's application, . . ." 521 F.2d at 1244.

". . . we cannot say that the trial judge's findings of fact [that Holiday Inns conspired with others] are clearly erroneous . . ." *Id.* at 1242.

In the instant case, as a result of the "radius letters" which informed the recipients that two applications for a franchise in downtown Reading had been received, one by the plaintiffs herein on July 8, 1971, to be located at Penn and 8th Street, and the other by American Motor Inns on June 28, 1971, to be located at Penn and 2nd Avenue North, only a few blocks apart. It is to be noted that American Motor Inns already had a Holiday Inn franchise operation in a distant part of Reading.

In response to the radius letters, Holiday Inn of Ephrata, Pennsylvania, after pointing out that both of the proposed locations were "a short 11 to 15 minutes from our Holiday Inn in Ephrata" objected strongly to the granting of either application because "it is my feeling that our property as it now stands, has a very serious survival problem under present conditions, let alone any additional competition from within our own chain." Exhibit K, Defendant's Brief.

The minutes of Holiday Inns, Inc.'s Franchise Committee meeting of July 30, 1971, recites that objection was also made in behalf of the Holiday Inn of Pottstown, Pennsylvania. Defendant's Brief, Exhibit E.

Of particular significance is the response of American Motor Inns, which as previously pointed out, already operated a Holiday Inn in Reading. It states:

"I received your letter notifying me of an application for a franchise for Reading, Pennsylvania, at Eighth & Penn Streets by Bresler & Reiner, Inc. We have purchased a piece of land from the same Urban Renewal only a few blocks away on the same street from this site and we have submitted an application for a franchise . . .

"These people have been in touch with me to see if we would be their tenants. Needless to say, it would be ridiculous to have two Holiday Inns this close together in a town such as Reading. Naturally, I

am opposed to the granting of this franchise.

"I trust that the franchise application that is under consideration by our company will be favorably acted upon." Defendant's Brief, Exhibit K.

Thus, it is to be observed that the objections by the Holiday Inns of Ephrata and Pottstown were not effective as vetoes inasmuch as a Holiday Inn franchise was granted to American Motor Inns for the downtown Reading location. This, of itself, distinguishes the case from the Newark, New Jersey case relied upon by plaintiffs where the objections received as a result of the radius letters, were permitted by Holiday Inns, Inc., to operate as a "veto of sorts" leading the court, on the basis of all the evidence, to a conclusion of a "local conspiracy" in Newark.

Reference must now be made to a conclusion reached by plaintiffs with respect to the aforementioned facts, as found in plaintiffs' brief, pp. 9–10:

"As a result of an objection by AMI, which was operating a Holiday Inn in Reading and was applying for another Holiday Inn license some six blocks from the site in B & R's application, HI rejected B & R's application because it would create competition with AMI's existing and proposed Holiday Inns in Reading." See also page 14 of Plaintiffs' Brief.

Exhibit "K" of defendant's brief, previously set out therein verbatim, clearly establishes the inaccuracy of plaintiffs' conclusion. That Exhibit shows that AMI did not object to the granting of a franchise because it would create competition with its existing Inn. On the contrary, it favored the granting of a franchise for a downtown Reading Holiday Inn, but to itself, which was first to apply, and not to plaintiffs whose application was a month later, a position which would not appear to be an unreasonable one.

Thus, contrary to the Newark conspiracy situation, defendant, having decided to issue a franchise over the recorded objections of other franchisees, was faced with the necessity of making what it would consider a sound business judgment in the selection of one of two competing applicants.

Plaintiffs, for support of its conclusion that it was denied a franchise because of objection by AMI, quotes a letter written to it by the director of franchise sales of Holiday Inns, Inc., in which plaintiff is informed that its application has been rejected and AMI's has been accepted.

"Though the site that you presented was excellent and the corporation which you represent well-known and liked by us, both committees felt that for the best development of the area the management of both Inns should be under the same ownership in an effort to have the Inns work in a harmonious manner and eliminate competition between the two properties. With the foregoing in mind, the committees have denied your request for an application in Reading and approved that of American Motor Inns, Inc." Plaintiffs' Brief, p. 15.

It appears to be plaintiffs' position that only one reasonable interpretation may be placed on the letter, *i. e.*, that it shows that AMI was permitted to exercise a "veto of sorts" and that the application of plaintiffs was rejected because of AMI's so-called objection, and therefore a conspiracy must be found as a matter of law.

It is believed, however, that a finder of the facts might reasonably conclude that the decision made was a unilateral or autonomous business judgment entirely independent of AMI's recommendation that it be granted a franchise and not the plaintiffs, just as it was independent of the objections of other franchisees to the acceptance of either application for a downtown Reading location.

Furthermore, such communication must be considered along with Exhibit E of defendant's brief which relates to the Holiday Inns Inc. Franchise Committee meeting of July 30, 1971, which dealt with the two applications for the downtown Reading franchise. There it is written:

"American Motor Inns presently owns the existing Holiday Inn in Reading.

The primary sources of business would be the intercity expressway, U.S. 422 and the downtown business district. Mr. Sam King of Ephrata, Pennsylvania, and Mr. Alex Gregory of Pottstown, Pennsylvania, submitted objection letters which were read to the Committee and discussed. Mr. Donald Coyne of Federated Home and Mortgage, State College, Pennsylvania, advised the Pottstown's population growth was not stable and that another inn in the area would take away business from Pottstown. The two sites are approximately three miles from the existing inn at Reading. Mr. Krisch was the first to submit the application. Mr. Poteete advised the Committee of the inns of Mr. Krisch which were failing inspections. Neither of the applicants received any adverse comments from the other departments.

"Mr. Beasley feels that Reading can easily accommodate another Holiday Inn and recommends the Krisch application for approval. Upon a motion made by Mr. Ashman and a second by Mr. Andrews, the Committee recommended approval of Mr. Krisch's application to the Executive Committee. Messrs. Poteete and Burrow cast negative votes on this motion. Mr. Ashman made another motion to deny the application submitted by Mr. Bresler. Mr. Burrow seconded this motion which the Committee unanimously approved."

It is believed that a finder of the fact, aided particularly by a trial of the issue, could find that the Committee's action as shown by the aforementioned minutes, reflected a unilateral or autonomous business judgment and uninfluenced by protesting franchisees, or by AMI's recommendation that it be granted the franchise. The same may be said with respect to the action of Holiday Inns, Inc. Executive Committee meeting on August 2, 1971, as indicated in defendant's brief, Exhibit F, in which the recommendations of the Franchise Committee were unanimously approved.

▮ After a careful consideration of plaintiffs' entire brief, the court concludes that plaintiffs, as the movants, have not met the burden of establishing clearly on the basis of materials in the record that no triable issue of fact exists with respect to the narrow question raised by their motion, i. e., whether the denial of plaintiffs' application was the result of a local conspiracy.

▮ Recognizing, as we must, that summary judgment is rarely allowed in an antitrust action, the conclusion is that it would not be appropriate here, not only because this is an antitrust action in which "motive and intent play leading roles" but also because on the basis of the entire record, there exists a genuine issue of fact as to the existence of a local conspiracy.

Accordingly, plaintiffs' motion for partial summary judgment must be denied.

In reaching its conclusion with respect to plaintiffs' motion, the court has not been unmindful of the defendant's motion for summary judgment, which is supported by discovery, most of which has been initiated by it.

▮ Supporting defendant's motion are two binders in which are indexed 170 exhibits, including various significant affidavits. After a thorough consideration of the memoranda of law submitted by defendant in connection with the aforementioned exhibits, and after reading all the depositions the conclusion seems irresistible that a jury would find for the defendant and that if this case was anything except an antitrust case in which "motive and intent play leading roles", "trial by affidavit is no substitute for trial by jury", and "it is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised" (*Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) ), summary judgment for the defendant would be justified.

The decision of the court denying defendant's motion was not made easier by the following taken from pages 48 and 49 of the deposition of Charles S. Bresler on February 18, 1976 (Docket Entry No. 57):

"Q. With respect to page 8 of the Answers to Interrogatories—it's unnumbered, but contains the Answer to Interrogatory No. 9—Are you presently aware of any other parties who Bresler & Reiner plans to claim as a co-conspirator in addition to American Motor Inns with respect to the causes of action pleaded in the Complaint in this case?

A. I believe we will determine that after our discovery and Request for Production of Documents and other information.

Q. That's not my question.

A. I'm not aware of any right now.

Q. What is the basis on which you rely for stating that American Motor Inns is a co-conspirator with Holiday Inns, Inc.?

A. Our attorneys' advice."

A very illuminating dialogue appears in Mr. Bresler's deposition taken on May 24, 1976, at pages 297–300:

"Q Mr. Bresler, your counsellor has just handed me a copy of the Complaint in this action. Have you read it?

A I read it, I think, at the last deposition and prior to it being filed or after it was filed. I'm not sure.

Q You are not sure whether you read it before or after if was filed?

A I can't recall.

Q Are you the source of any of the facts which are contained in the allegations in the Complaint?

A I have to look at it to refresh my memory.

Q Well, go ahead. Refresh your memory.

A I'm not the source of number one. MR. LEVIN: Paragraph one?

THE WITNESS: Paragraph one, I'm sorry. I could be the source of number two, I am not the source of number three, I'm not the source of number four, I'm not the source of number five, number six, number seven—

BY MR. REYCRAFT:

Q You are not the source of number seven?

A No.

Q Okay.

A Frankly, this looks like mostly legal language my attorneys put together. Do you want me to go through all of them?

Q I would appreciate if you would tell me whether there are any paragraphs in the Complaint as to which you are the source of the information.

A I could be the source of number 14. If not, it was our office who was the source of it. I could be the source of 15, I could be the source of 16. The balance of it looks like it's legal verbiage and I presume our attorneys prepared the prior and the other material thereto.

Q So that you think you could be the source of four of these paragraphs, 2, 14, 15 and 16?

A It's possible. Our office could be the source of more, and as I say, I can't recall.

Q When you say you can be the source, does that mean that you can support the allegations contained in those paragraphs?

A I believe all the allegations can be supported in the entire Complaint.

Q I mean you personally.

A I'd have to look at the paragraphs again. When you say can I personally support them, would you give me the numbers, please.

Q Two.

A Two—well, as a matter of fact we are a Delaware Corporation with our principal place of business—so that's a matter of record. What was the next one?

Q Fourteen.

A This has already been supported, that the Redevelopment Authority of Reading designated us and the documentation has already been submitted. I mean designated Bresler & Reiner as a developer of the downtown east project. What was the next one?

Q Fifteen.

A Fifteen—it's a matter of record that we do run a Holiday Inn Motel in Camp Springs. Next one?

Q Sixteen.

A Sixteen—it's a matter of record that we did submit an application.

Q  That's it.

A  Okay.

Q  I mean those are the numbers you gave me.

A  Yes.

Q  As to the rest of the Complaint, you essentially rely on your lawyers to support those allegations?

A  That's right.  I think the facts, as will be developed, will support it also."

In the oral deposition of Burton J. Reiner, taken on February 17, 1976, we find at pages 69, 70, 71, the following:

"Q.  On page 8 of the Answers to Interrogatories—my copy is unnumbered—

A.  And mine too.

Q.  With respect to Interrogatory 9, there is a reference to conspirator or co-conspirator.

MR. LEVIN:  The page?

MR. ALCORN:  This is an unnumbered page on the Answers to Interrogatories.

BY MR. ALCORN:

Q.  In Answer to Interrogatory 9, there is a reference to co-conspirator named in paragraph 4 of the Complaint, and it indicates to me that the only conspirator to which Bresler & Reiner has reference is American Motor Inns.  Are you presently aware of any co-conspirators that plaintiffs are alleging conspired with Holiday Inns, Inc., in perpetration of the causes of action purportedly pleaded in the Complaint other than American Motor Inns?

A.  I would say no.

Q.  Are you personally aware that American Motor Inns conspired with Holiday Motor Inns in violating the antitrust laws?

A.  No."

"Q.  Were you consulted when the Complaint was drafted as to the facts underlined in the claims?

A.  I think I read the Complaint.

Q.  Did you make any changes in the draft of the Complaint?

A.  No.  I left that up to counsel.

Q.  In other words, depended on counsel for the factual allegations in the Complaint?

A.  I think he was furnished with the actual allegations.

Q.  By whom, sir?

A.  I would say Mr. Bresler and maybe some by me.  I don't recall."

The court notes defendant's observation on page 7 of its reply memorandum in support of its motion for summary judgment (Docket Entry No. 86) with respect to the national conspiracy and monopolization allegations of the complaint:

"Moreover, plaintiffs do not, in their memorandum contra defendant's motion for summary judgment or anywhere else assert a single fact in support of these allegations, although they have had over eighteen months since the commencement of the action to establish, through discovery or affidavit, the existence of at least a genuine issue of material fact, as to these allegations.  All plaintiffs deign to say on this point is that 'discovery proceedings are a privilege afforded to a litigant and not a mandatory requirement'.  (Id. at 10)"

For the present, a sufficient response to the above is a reminder:

"While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dressed trial notwithstanding the absence of any significant probative evidence tending to support the complaint."

*First Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

█   The plaintiffs' motion for partial summary judgment must be denied; defendant's motion for summary judgment on the issue of a violation of Section 1 of the Sherman Act based on alleged conspiracy between Holiday Inns, Inc. and American Motor Inns, Inc. is denied; defendant's motion for summary judgment with respect to

the national conspiracy and monopolization allegations of the complaint is denied, but without prejudice to its renewal, if desired, at some future and appropriate time.